The DWECK LAW FIRM,
L.L.P., Plaintiff,

v.

Cynthia Allen MANN, Defendant.

No. 03 Civ.8967(SAS).

United States District Court,
S.D. New York.

May 3, 2004.

---

Jack S. Dweck, Robert W. Phelan, The Dweck Law Firm, L.L.P., New York City, for Plaintiff.

Aegis J. Frumento, Francine N. Nisim, Duane Morris, L.L.P., New York City, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

The Dweck Law Firm, L.L.P.[1] ("Dweck") is suing Cynthia Allen Mann ("Mann"), a former client, alleging breach

of the covenant of good faith and fair dealing. Mann now moves to dismiss the complaint, and Dweck cross moves for summary judgment.

## I. BACKGROUND

### A. Procedural History

On October 23, 2002, Dweck filed an action against Mann for breach of contract and libel. The complaint alleged that (1) Dweck and Mann entered into a written contingency fee contract, (2) pursuant to its obligations under the contract, Dweck negotiated a settlement between Mann and her former employer, and (3) Mann breached her contract with Dweck by refusing to execute the settlement with her former employer. According to Dweck, it performed all of its obligations under the contract, and was therefore entitled to payment in the form of a percentage of the amount of the settlement that Mann had rejected. Dweck further alleged that Mann defamed the Dweck Law Firm's reputation by suing the firm for legal malpractice in state court.

In *Dweck I*, I dismissed Dweck's breach of contract claim because under New York law, "where the attorney in a contingency fee case is discharged but the client makes no recovery in the underlying action, [ ] the attorney's fees are limited to disbursements ..." *Dweck I*, 2003 WL 22480042, at *3. I also dismissed Dweck's libel claim on the grounds that "[i]t is a long-standing

---

**1.** Despite my admonition to the Dweck Firm in *Dweck Law Firm, L.L.P v. Mann*, No. 02 Civ. 8481, 2003 WL 22480042, *1 n. 1 (S.D.N.Y. Nov. 3, 2003) (*"Dweck I"*), in its submissions, the firm once again purports to appear before this Court pro se. As I noted in *Dweck I*, "a corporation, partnership, or association may appear in federal court *only* through licensed counsel," *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 217, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (emphasis added);

see also *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d. Cir.1997). Because Jack S. Dweck, a member of The Dweck Firm and the signatory to Dweck's submissions to the Court, is admitted to the Bar of this Court and appears to have filed an appearance sheet in this action, I will assume, for purposes of the pending motions, that he is counsel to the Dweck Firm. However, the firm is instructed that in all future submissions to the Court, the Dweck Firm may *not* purport to appear pro se.

principle of New York law that a statement made in the course of judicial proceedings is absolutely privileged so long as pertinent to the controversy, and may not be the basis for a libel action." *Id.* at *4. However, I did note that Dweck might be able to pursue a claim against Mann for breach of the covenant of good faith and fair dealing. *See id.* at *5 n. 6. Thereafter, Dweck filed this action against Mann.

## B. The New Complaint

In its new complaint ("Compl."), Dweck alleges the following facts, all of which are deemed true for purposes of Mann's motion to dismiss.[2] Prior to September 23, 1998, Mann engaged Dweck on an hourly basis to advise her with respect to various issues involving her employer, First Union National Bank. These issues included claims of gender discrimination, harassment, failure to promote, and age discrimination. *See Compl.* ¶ 7.

Mann eventually became concerned about her accumulating legal bills, and requested that her fee arrangement with the firm be changed from an hourly rate to a contingency agreement. *See id.* Thus, on September 23, 1998, the parties entered into a written retainer agreement, whereby the firm agreed to prosecute, negotiate, adjust or settle a claim for wrongful discharge, age and gender discrimination, harassment and mental anguish against First Union National Bank, on Mann's behalf.[3] *See id.* ¶ 8. Pursuant to the retainer agreement, Mann was to pay $12,500 upon execution of the agreement, and, "[s]hould the action or proceeding result in a recovery, whether by suit, settlement or other-

wise, [ ] thirty-three and one-third (33 1/3%) percent of all sums recovered against which [ ] shall be credited the Twelve Thousand Five Hundred ($12,500) Dollars advanced [ ] hereunder." *See* Retainer Agreement Between Cynthia Allen Mann and the Dweck Law Firm L.L.P. ("Retainer Agreement"), Ex. E to the Affidavit of Aegis Frumento, Mann's counsel, in support of defendant's motion to dismiss.

In connection with its obligations under the Retainer Agreement, Dweck rendered legal services on Mann's behalf, negotiating and attempting to settle Mann's claims against First Union National Bank. *See* Compl. ¶ 10. Sometime during the course of the negotiations, Mann stated that she did not want to pursue any further actions against First Union, and that she wished to "go on with her life." *Id.* ¶ 11. Nonetheless, Mann accepted two settlement offers from First Union, the first for $1,035,000, and the second for $1,350,000. *See id.* ¶ 12. However, Mann refused to execute either settlement agreement, and as a result, no settlement was ever consummated. According to Dweck, Mann's refusal to execute the settlement agreements with First Union was driven by her desire to deprive Dweck of the fees to which it was entitled pursuant to the terms of the Retainer Agreement. *See id.* ¶ 13.

## II. APPLICABLE LAW

### A. Standard On a Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dis-

---

**2.** These facts are *not* deemed true for purposes of Mann's cross motion for summary judgment.

**3.** The retainer agreement is not attached to the Complaint, but was provided to the Court as an exhibit to defendant's motion to dismiss. Because it is referenced in the Complaint, the

court may consider it in ruling on a motion to dismiss. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (for purposes of Rule 12(b), the complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"); *see also Dweck I,* 2003 WL 22480042, at *1 n. 3.

miss should be granted only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' " *Weixel v. Board of Educ. of New York,* 287 F.3d 138, 145 (2d Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (alterations omitted)). At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998)); *see also In re Initial Public Offering Securities Litig.,* 241 F.Supp.2d 281, 322–24 (S.D.N.Y.2003).

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Pierce v. Marano,* No. 01 Civ. 3410, 2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002) (quotation marks and citations omitted). When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor. *See Chambers,* 282 F.3d at 152.

## B. Standard On a Motion for Summary Judgment

Summary judgment is permissible "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.' " *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if "it 'might affect the outcome of the suit under the governing law.' " *Id.* (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir.2002) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Once the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Elec. Inspectors, Inc. v. Village of East Hills,* 320 F.3d 110, 117 (2d Cir.2003). "The 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Moreover, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar College,* 196 F.3d 435, 452 (2d Cir.1999); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (quotation marks, citations, and alterations omitted). Conclusory statements, conjecture or speculation cannot by themselves create a genuine issue

of material fact. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

### C. Breach of the Covenant of Good Faith

 Under New York law,[4] all contracts contain an "implicit covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educational Testing Serv.,* 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995). The implied covenant of good faith encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Rowe v. Great Atlantic & Pacific Tea Co.,* 46 N.Y.2d 62, 69, 412 N.Y.S.2d 827, 385 N.E.2d 566 (1978); *see also RUS, Inc. v. Bay Indus., Inc.,* 322 F.Supp.2d 302, 315 (S.D.N.Y.2003) ("To breach the implied covenant, the party must act in a way that is inconsistent with the justified expectations of the other party, or act for reasons other than the ones it discloses.").

 The implied covenant of good faith and fair dealing prohibits contracting parties from intentionally doing anything "to prevent the other party from carrying out his part of the agreement. 'Persons invoking the aid of contracts are under implied obligation to exercise good faith not to frustrate the contracts into which they have entered.' " *Lowell v. Twin Disc, Inc.,* 527 F.2d 767, 770 (2d Cir.1975) (quoting *Grad v. Roberts,* 14 N.Y.2d 70, 75, 248 N.Y.S.2d 633, 198 N.E.2d 26 (1964)). Moreover, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Kirke La Shelle Co. v. Paul Armstrong Co.,* 263 N.Y. 79, 87, 188 N.E. 163 (1933); *see also Dalton,* 87 N.Y.2d at 389, 639 N.Y.S.2d 977, 663 N.E.2d 289; *AIM Int'l Trading, L.L.C. v. Valcucine S.P.A., IBI, L.L.C.,*

No. 02 Civ. 1363, 2003 WL 21203503, at *9 (S.D.N.Y. May 22, 2003). Thus, "where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton,* 87 N.Y.2d at 389, 639 N.Y.S.2d 977, 663 N.E.2d 289; *see also 1–10 Indus. Assocs. L.L.C. v. Trim Corp. of Am.,* 297 A.D.2d 630, 747 N.Y.S.2d 29, 31 (2d Dep't 2002) (holding that even where one party to a contract has discretion with respect to its obligations under the contract, the implied covenant of good faith requires that party to exercise its discretion in good faith).

 To state a cause of action for breach of the implied covenant of good faith and fair dealing, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce,* 265 A.D.2d 513, 697 N.Y.S.2d 128, 130 (2d Dep't 1999).

### III. DISCUSSION

### A. Mann's Motion to Dismiss

#### 1. Dweck Sufficiently States A Cause of Action

 In its complaint, Dweck alleges that it entered into the Retainer Agreement with Mann, and pursuant to that contract, negotiated a satisfactory settlement between Mann and her employer. Dweck further alleges that Mann accepted the settlement, but then refused to execute it in order to deprive Dweck of the benefits to which it was entitled under the Retainer Agreement. *See supra* Part I.B. Therefore, Dweck sufficiently states a cause of action for breach of the covenant of good faith and fair dealing because the

---

**4.** It is undisputed that New York law governs this action.

complaint alleges that Dweck and Mann entered into a contract, and that Mann "sought to prevent performance of the contract or to withhold its benefits from" Dweck.[5] *Aventine Inv. Mgmt.,* 697 N.Y.S.2d at 130; *see also Dalton,* 87 N.Y.2d at 389, 639 N.Y.S.2d 977, 663 N.E.2d 289; *Kirke La Shelle Co.,* 263 N.Y. at 87, 188 N.E. 163.

### 2. *Dweck I* Does Not Control This Action

Mann contends that Dweck's new complaint should be dismissed for the reason articulated in *Dweck I. See* Mem. at 9–12. This argument is misplaced. The cause of action at issue in *Dweck I* was a breach of contract claim, wherein Dweck sought to recover the reasonable value of its work, labor and services. Dweck claimed that it had fulfilled all of its obligations under the Retainer Agreement, and argued that Mann breached the agreement by refusing to compensate Dweck for its services. The Court rejected the breach of contract claim because under the facts alleged by Dweck, it had not, in fact, performed all of its obligations under the contract: Mann never *recovered* anything, and the Retainer Agreement entitled Dweck to compensation *only* in the event of a *recovery* by

Mann. This conclusion was based on principles of New York law whereby an attorney that has a contingent fee arrangement is not entitled to its fee unless the client is compensated in the underlying action. *See Dweck I,* 2003 WL 22480042, at *5.

The complaint now before the Court alleges slightly different facts than the complaint at issue in *Dweck I.* In particular, Dweck no longer claims to have fulfilled all of its obligations under the Retainer Agreement. Instead, Dweck alleges that it rendered legal services on behalf of Mann as required by the contract, but that Mann frustrated Dweck's efforts to complete that work, thereby divesting Dweck of its right to receive payment under the Retainer Agreement. Dweck further alleges that Mann refused to enter into a settlement with her former employer in bad faith, and that her actions were intended to deprive Dweck of the payment it would have received if the settlement had been consummated.

██ Thus, the facts alleged in the new complaint are different than the facts alleged in *Dweck I.* More importantly, Dweck no longer seeks to recover under a breach of contract theory. This distinction is crucial because a breach of contract

5. Mann contends that Dweck will not be able to prove the facts it alleges in the complaint. In particular, Mann urges the Court to take judicial notice of Mann's pending litigation against First Union. According to Mann, because she was not satisfied with First Union's settlement offers, she rejected them and proceeded against First Union in Federal District Court. In that litigation, she is seeking considerably more money than she was offered in the settlement proposals. *See* Memorandum of Law in Support of Cynthia Allen Mann's Motion to Dismiss the Complaint ("Mem.") at 5–7. Mann argues that her litigation against First Union "proves beyond a doubt that she did not refuse to settle 'solely' to deprive Dweck of [its] fee; she did so to pursue her legal remedies in a court of law." *Id.* at 6.

This argument is premature. Mann is correct in arguing that the Court may take judicial notice of the *existence* of the litigation between Mann and First Union. *See Harris v. New York State Dep't of Health,* 202 F.Supp.2d 143, 173 n. 13 (S.D.N.Y.2002) (courts may take judicial notice of "pleadings and other documents in the public record filed by a party in other judicial proceedings"). However, Mann is asking the Court to do much more than merely take judicial notice of her litigation with First Union; she is asking the Court to make inferences and draw conclusions regarding that lawsuit, and use those conclusions to reject the allegations contained in Dweck's complaint. The Court *cannot* do this on a motion to dismiss. *See Phelps,* 308 F.3d at 184–85; *Pierce,* 2002 WL 1858772, at *3.

action requires complete performance by the party seeking to recover. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir.1994) ("Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.").[6] A claim for breach of the covenant of good faith and fair dealing, on the other hand, has no such requirement. *See supra*, Part II. In fact, a claim for breach of the covenant of good faith and fair dealing addresses precisely the type of situation where one party is harmed by its *inability* to fulfill its obligations under the contract *because* of the bad faith actions of the other party.[7]

### 3. Dweck's Claim Is Not Incompatible with Mann's Right to Terminate Her Attorney

■ Finally, Mann argues that Dweck's claim is "incompatible" with Mann's right to discharge her attorney at any time. *See* Mem. at 13. The only law Mann cites in support of this proposition is case law generally holding that clients have an absolute right to terminate attorneys and refuse settlement offers. *See id.* at 13–14. But these cases do not hold that an attorney can never bring an action against a client that has acted in bad faith and thereby harmed the attorney.[8]

■ Where a client refuses a settlement offer because she believes her claim is worth more, and that her attorney has not effectively advocated on her behalf, she is not acting in bad faith. The client would have an absolute right to terminate the attorney in such circumstances. Moreover, the terminated attorney likely could not prevail on a claim for breach of the covenant of good faith and fair dealing because the attorney would be unable to demonstrate that the client rejected the settlement in bad faith or in an effort to harm the attorney. If, on the other hand, the client believes the settlement offer is satisfactory, but refuses it because she does not want to forfeit any of the recovery to her attorney, her actions may constitute bad faith. Nonetheless, she would not lose her absolute right to terminate the attorney, and the termination itself would not give rise to a cause of action. However, the client's bad faith conduct during the course of the representation *may* be actionable. Allowing the attorney to protect himself in this way is not "incompatible" with the client's right to terminate the attorney-client relationship; a client may always terminate her attorney.

6. This is consistent with the principle that an attorney is not entitled to payment under a retainer agreement unless the client actually recovers in the underlying action, because if the client does *not* recover, then the attorney has not fulfilled its obligations that would entitle him to payment.

7. Mann argues that a claim for breach of the covenant of good faith and fair dealing cannot survive in the absence of an enforceable contract. She then notes that Mann terminated her contract with Dweck. *See* Memorandum of Law in Further Support of Defendant Cynthia Allen Mann's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment at 6. Mann contends that because the parties no longer have an enforceable

contract (because Mann terminated the contract), Dweck cannot bring an action against Mann for breaching the covenant of good faith and fair dealing. This argument is wholly without merit. Prior to the termination, the parties *had* an enforceable contract that implicitly contained a covenant of good faith and fair dealing. The fact that the parties no longer have an enforceable contract is irrelevant.

8. Mann also cites the ethical rules governing attorneys for the proposition that attorneys must abide by their clients' decisions. *See* Mem. at 14. But nowhere do the ethical rules prohibit attorneys that are harmed by their clients from bringing actions against those clients.

However, the fact that a client has an absolute right to terminate her attorney at any time does not give her free reign to abuse the attorney, or act in bad faith in her dealings with the attorney, during the course of the representation.

It will be the rare case, indeed, where an attorney may bring an action against a client as a result of the client's refusal to accept a proposed settlement. As Mann's attorneys noted, there appears to be only one other reported case involving an attorney suing a client for breach of the covenant of good faith and fair dealing as a result of the client's refusal to accept a settlement offer. *See Hagans, Brown & Gibbs v. First Nat'l Bank of Anchorage,* 783 P.2d 1164 (Alaska 1989). In such cases, courts should be especially vigilant in enforcing the attorney's Rule 11 obligations to ensure that the action is brought in good faith, and not in an effort to force a client to accept a settlement offer.

In this case, Dweck's Complaint and 56.1 Statement suggest that Dweck is acting in good faith. Dweck alleges that Mann refused First Union's settlement offers in order to deprive Dweck of its fee. *See* Compl. ¶ 13. In support of this allegation, Dweck claims that Mann *told* Dweck she would accept the settlement proposals if Dweck substantially reduced or eliminated the fee. *See* Mann's 56.1 Statement of Facts Not in Dispute ("56.1 Stmt.") ¶¶ 6, 8. Moreover, in a separate action, the New York Supreme Court and the Appellate Division determined that Dweck had performed all of its obligations under the Retainer Agreement, and is entitled to a lien on any funds Mann recovers from First Union. *See id.* ¶¶ 9, 14. Based on these allegations, the Court is satisfied that in filing this unusual action, Dweck has satisfied its Rule 11 obligations.

## B. Dweck's Motion for Summary Judgment

██ Dweck purports to move for summary judgment, and submitted to the Court a Statement of Undisputed Facts Pursuant to Rule 56.1. Yet, Dweck's Memorandum of Law in Support of Plaintiff's Cross Motion for Summary Judgment and in Opposition to Defendant's Motion to Dismiss is devoted *exclusively* to opposing Mann's motion to dismiss. Though Dweck identifies the material facts that entitle it to summary judgment, Mann disputes these very facts. Indeed, if the facts alleged in Dweck's 56.1 Statement were undisputed, it might be entitled to summary judgment. *See* 56.1 Stmt. and Dweck's Response to Plaintiff's Statement of Undisputed Facts Pursuant to Rule 56.1. But under these circumstances, summary judgment is not warranted.

Moreover, summary judgment is entirely inappropriate at this stage of the proceedings. The parties have not engaged in discovery, and the briefs submitted in connection with Mann's motion to dismiss make clear that there *are* disputed issues of material fact. In particular, Dweck alleges that Mann rejected First Union's settlement offers in bad faith and in order to deprive Dweck of its fee; Mann contends that she rejected the settlement offers because she believed her claims against First Union were worth more than she was offered. This disputed fact is both material and genuine because based on the allegations now before the Court, "a jury could return a verdict for the nonmoving party," *Gayle,* 313 F.3d at 682 (quotation marks omitted), and the issue of Mann's motivations in rejecting the settlement will certainly "affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Therefore, Mann's motion for

summary judgment is denied, with leave to renew at the close of discovery.

## IV. CONCLUSION

For the foregoing reasons, Mann's motion to dismiss the complaint, and Dweck's cross motion for summary judgment, are denied. The Clerk of the Court is directed to close these motions [docket # s 8, 15]. A conference is scheduled for May 13, 2004, at 4:30 p.m.

SO ORDERED.